# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FUFC, LLC | CIVIL ACTION |
| VERSUS | 18-1095 |
| EXCEL CONTRACTORS, LLC, ET AL. | |

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] by Scott Butaud ("Butaud"). Excel Contractors, LLC ("Excel") has filed an *Opposition*[2] to this motion. For the following reasons, Butaud's *Motion* is DENIED under Rule 12(b)(2) and GRANTED under Rule 12(b)(6).[3]

## I. FACTS AND PROCEDURAL HISTORY

FUFC filed a *Complaint*[4] on December 21, 2018 against Excel Contractors, alleging that after FUFC purchased the accounts receivable of Superior Disaster Relief, LLC ("Superior"), FUFC acquired invoices submitted to Excel by Superior. Because Superior had failed to pay for various goods and services, Excel became aware that multiple material suppliers hold or may hold claims against it due to Superior's failure to pay for the goods and services supplied. In summary, various suppliers in Puerto Rico sold materials to Superior, who then invoiced Excel for the materials. Superior then sold those invoices to FUFC, who now has filed suit seeking

---

[1] Rec. Doc. 35.
[2] Rec. Doc. 37.
[3] Rec. Doc. 35.
[4] Rec. Doc. 1.
59449

to compel Excel to pay it for the materials sold by the various suppliers in Puerto Rico. Consequently, because the funds sought by FUFC and potentially by the Puerto Rican suppliers are common in origin, Excel filed for statutory interpleader[5] and was permitted to deposit funds into the registry of the Court.[6] Excel also filed a *Third Party Complaint* asserting claims against Superior and Butaud.[7]

## II. LAW AND ANALYSIS

The Court first considers Butaud's *Motion to Dismiss* under Rule 12(b)(2) for lack of personal jurisdiction.

### A. Rule 12(b)(2)

#### i. Legal Standard

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located."[8] Thus, personal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.[9] "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."[10] "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general

---

[5] Rec. Doc. 14.
[6] Rec. Doc. 57.
[7] Rec. Doc. 7.
[8] *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242 (5th Cir. 2008).
[9] LA. REV. STAT. art. 13:3201.
[10] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. at 125 (2014)).
59449

jurisdiction in the state where the district court is located."[11] Consequently, the Court shall apply Louisiana law on personal jurisdiction to determine whether it has personal jurisdiction over Butaud.

The Due Process and Long Arm Statute queries merge into one because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause.[12] Due process is satisfied for personal jurisdiction purposes when: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."[13] The "purposeful availment must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state."[14] The "minimum contacts" prong is split into two forms: general personal jurisdiction and specific personal jurisdiction.[15]

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."[16] "Even if minimum contacts exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends 'traditional

---

[11] *Id.* (quoting FED. R. CIV. P. 4(k)(1)(a)).
[12] *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *St. Martin & Mahoney v. Patton*, 863 F.Supp. 311, 313–14 (E.D.La.1994).
[13] *Mark Doyle Construction, LLC v. TriHM Found., LLC*, 2018 WL 3763014 at *6 (W.D. La. 2018) (citing *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 367 (5th Cir. 2010)).
[14] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 ("This 'purposeful availment requirement' ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.") (citations omitted); *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 588 (5th Cir. 2014).
[15] *Choice Healthcare*, 615 F.3d at 368.
[16] *Walk Haydel*, 517 F.3d at 245 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).
59449

notions of fair play and substantial justice.'"[17] The second prong of the Due Process Clause analysis requires the Court to consider (1) the defendant's burden, (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies.[18]

Where a defendant has "substantial" and "continuous and systematic general business contacts" with the forum state, the court may exercise general personal jurisdiction over any action brought against the defendant.[19] General personal jurisdiction is therefore appropriate when the defendant is essentially "at home in the forum state."[20] The "continuous and systematic contacts test is difficult to meet,"[21] and its purpose is to enable potential defendants to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."[22] "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction."[23]

Where contacts are less pervasive, a court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum"[24] when the

---

[17] *Ruston Gas Turbines*, 9 F.3d at 421 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).
[18] *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809 (2006) (citing *Ruston Gas Turbines*, 9 F.3d at 421).
[19] *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).
[20] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).
[21] *Blue Racer Midstream, LLC v. Kelchner, Inc.*, 2018 WL 993782 at *2 (N.D. Tex. 2018) (citing *Johnston v. Multidata Systems Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008)).
[22] *Burger King*, 471 U.S. at 472.
[23] *Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (quoting Johnston, 523 F.3d at 609).
[24] *Id.* at 414; *Luv N' Care, Ltd., v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
59449

"nonresident defendant has purposefully directed its activities at the forum state."[25] The Fifth Circuit follows a three-step analysis for specific personal jurisdiction.

First, a court must determine "whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."[26] This minimum contacts/purposeful availment inquiry is fact intensive. No one element is decisive, and the number of contacts with the forum state is not, by itself, determinative.[27] A single, substantial act directed toward the forum can support specific jurisdiction,[28] but even multiple contacts, if "[r]andom, fortuitous, or attenuated . . . are not sufficient to establish jurisdiction."[29] For the purposes of specific personal jurisdiction, what is significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the privileges or benefits of the laws of the forum state.[30]

Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[31] At this step, the proper focus in the analysis is on the "relationship among the defendant, the forum, and the litigation."[32] This is a claim-specific inquiry, as "the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum

---

[25] *Choice Healthcare*, 615 F.3d at 368 (quoting *Walk Haydel*, 517 F.3d at 243).
[26] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *see also Hanson v. Denckla*, 357 U.S. 235, 250–251 (1958).
[27] *Luv N' Care*, 438 F.3d at 470.
[28] *See ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990).
[29] *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King*, 471 U.S. at 479 (1985)).
[30] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citing *Hanson* 357 U.S. at 251, 254); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983), *cert. den.*, 466 U.S. 962 (1984).
[31] *Nuovo Pignone*, 310 F.3d at 378.
[32] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).
59449

contacts."[33]

Third, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable."[34] In this inquiry, a court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[35] "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown."[36]

Personal jurisdiction may not be avoided merely because a defendant did not physically enter the forum state. Although territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a state in which business is conducted. As long as a commercial actor's efforts are "purposefully directed" toward residents of the state in question, courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.[37]

Even so, "merely contracting with a resident of the forum state does not establish

---

[33] *Conwill v. Greenberg Traurig, L.L.P., et al.*, No. 09-4365, 2009 WL 5178310 at *3 (E.D. La. Dec. 22, 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006)).
[34] *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 382).
[35] *Luv N' care*, 438 F.3d at 473; *see also, Burger King Corp.*, 471 U.S. at 476–77 (listing 7 factors).
[36] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008) (citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).
[37] *Burger King*, 471 U.S. at 476–77.
59449

minimum contacts."[38] "A contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."[39]

Although a single act, such as a telephone call or mailing a letter, can be sufficient to establish minimum contacts, precedent is clear that communications alone are insufficient when "the communications with the forum did not actually give rise to [the] cause of action."[40] Rather, when communications relating to conducting business are the only contacts, courts generally require some type of "continuing obligations" between the defendant and residents of the forum, such as is found in an ongoing business relationship, to find that the defendant availed himself of the privilege of conducting business in the forum. Only then, "because his activities are shielded by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."[41]

On the other hand, for claims of intentional tort, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."[42] "When the actual content of communications with a forum gives rise to

---

[38] *Moncrief Oil*, 481 F.3d at 311.
[39] *Burger King*, 471 U.S. at 479 (internal citations omitted).
[40] *Wein Air*, 195 F.3d at 213; *Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir. 1992).
[41] *Burger King*, 471 U.S. at 476.
[42] *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (citing *Brown v. Flowers Indus.*, 688 F.2d 328, 332–33 (5th Cir. 1984) (holding that one long distance telephone call alleged to constitute defamation was enough to establish minimum contacts)).
59449

intentional tort causes of action, this alone constitutes purposeful availment."[43]

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident.[44] When a district court rules on a motion to dismiss without an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction.[45] At this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiff's favor.[46]

To aid resolution of the jurisdictional issue, a court "may receive interrogatories, depositions or any combination of the recognized methods of discovery . . . But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[47] "When deciding a motion to dismiss for lack of personal jurisdiction, the court is not limited to considering the facts pleaded in the complaint."[48]

---

[43] *Wein Air*, 195 F.3d at 213 (5th Cir. 1999); *see also, Ross*, 246 Fed.Appx. 856, 859–60 (5th Cir. 2007) (deeming allegations that out of state counsel communicated false information to client in Texas alone sufficient to make prima facie case of specific personal jurisdiction).
[44] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir.1982), *cert. den.*, 450 U.S. 1023 (1983).
[45] *Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 230–31 (5th Cir. 1995) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986), *cert. den.*, 481 U.S. 1015 (1987).
[46] *D.J. Inv., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir.1985).
[47] *Walk Haydel*, 517 F.3d at 241 (holding that a district court erred in requiring a plaintiff to establish more than a prima facie case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).
[48] *SpinSci Technologies*, 2018 WL at *3 (citing *Walk Haydel*, 517 F.3d at 241).
59449

### ii. Parties' Arguments

Butaud plainly contends in his *Motion* that because the third-party complaint filed by Excel alleges that Butaud is a resident of Texas,[49] and because there are insufficient facts showing that Butaud is "essentially at home" in Louisiana, the Court does not possess general personal jurisdiction over Butaud.[50] In support of its assertion of general personal jurisdiction, Excel submits as an exhibit a search of Lafayette Parish mortgage records for "Scott Butaud," which indicates that Butaud possesses the following:

- An existing mortgage in the amount of $910,000 for residential property.
- Various personal judgments against [Butaud] rendered by Louisiana courts.
- Various UCC filings.[51]

Excel also alleges that Butaud's status as the registered agent for service and as a member and manager of multiple Louisiana business entities serves as evidence that Butaud has "continuous and systematic" contacts with Louisiana.[52]

To support its assertion of specific personal jurisdiction, Excel alleges in its third-party demand that Butaud caused significant financial damages in Louisiana through "misapplication of funds"[53] and fraudulent behavior constituting a breach of contract and resulting in personal liability.[54] Consequently, Excel argues, "Mr. Butaud

---

[49] Rec. Doc. 14.
[50] Rec. Doc. 35-1 p. 11 (citing *Daimler*, 571 U.S. at 139 ("For an individual, . . . general jurisdiction is the individual's domicile.").
[51] Rec. Doc. 42 p. 13 (citing Rec. Doc. 42-3).
[52] *Id.*
[53] *Id.* at p. 11 (citing Rec. Doc. 7 ¶ 51).
[54] *Id.* (citing Rec. Doc. 7 ¶ 51, 53, 58-59, 62-63, 68) ("Excel's *Third Party Demand* specifically sets forth that Superior and Mr. Butaud engaged in the 'misapplication of funds' and otherwise 'knowingly failed to apply the money received from [FUFC] and Excel as necessary to settle claims of sellers of movables or laborers'; assigned task orders and received payment from [FUFC], but then returned the task orders to Excel; 59449

is personally liable for his fraudulent, wrongful, and deceitful actions."[55] Indeed, Excel alleges that Butaud is a "member, manager, and agent of Superior" and that Superior is a Louisiana company.[56] Excel points to the text of the Louisiana Long Arm Statute, particularly emphasizing the following portions:

> A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
> (1) Transacting any business in this state.
> . . .
> (3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
> (4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
> (5) Having an interest in, using or possessing a real right on immovable property in this state.
> . . .
> B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.[57]

Excel argues that Butaud's actions caused damage in Louisiana because the damages were suffered by Excel, a Louisiana business entity.[58]

---

'knowingly invoiced Excel for materials Superior obtained on projects unrelated to Excel's scope of work'; and 'obtained materials from Excel, and subsequently sold those same materials to other contractors.'").
[55] Rec. Doc. 42 p. 11.
[56] *Id.* p. 10.
[57] LA. REV. STAT. art. 13:3201.
[58] Rec. Doc. 42 p. 9, 11-12.
59449

Butaud argues that the conduct giving rise to Excel's claims was not directed at Louisiana and that Butaud therefore did not purposefully avail himself of Louisiana law. Butaud points to Excel's own allegations in the *Third Party Complaint* that indicate that "this action arises out of a contract to perform work in Puerto Rico for the government of Puerto Rico pursuant to contract governed by Puerto Rican law, requiring litigation of any claims in Puerto Rico,"[59] and that "[t]he disputes about payment arose while Mr. Butaud was located in Puerto Rico, communicating with Excel personnel in Puerto Rico."[60]

### iii. General Personal Jurisdiction

The Court finds that the mortgage and security filings, together with the assertion that Butaud is a member of at least seven business entities in Louisiana—including Superior, the Louisiana entity involved in the present case—constitute "continuous and systematic contacts" with the state of Louisiana such that Butaud is "essentially at home" in Louisiana. Although Excel states in the *Third Party Complaint* that Butaud is a resident of Texas, the Court is permitted on a Rule 12(b)(2) motion to consider alleged facts outside the four corners of the complaint. Further, any facts alleged in support of a 12(b)(2) motion are to be construed in the light most favorable to the plaintiff.[61] Butaud's ownership of real property in the state of Louisiana, together with his substantial involvement in Louisiana businesses, is sufficient to support a finding of general personal jurisdiction.

---

[59] Rec. Doc. 35-1 p. 13 (citing Rec. Doc 7 ¶ 44; Rec. Doc. 7-1 p. 6, ¶¶16-17).
[60] Rec. Doc. 35-1 p. 13.
[61] *Walk Haydel*, 517 F.3d at 241.
59449

Moreover, the contacts of Superior can be imputed to Butaud for the purposes of jurisdiction. Excel contends in its *Opposition* that its *Third Party Complaint* seeks to pierce the corporate veil of Superior as a limited liability company by alleging that Butaud, a member of Superior, is personally liable due to his allegedly fraudulent conduct.[62] "[W]hen jurisdiction is at issue, traditional veil piercing operates vertically to allow the Court to impute a corporation's contacts to its shareholders."[63] *A fortiori*, the imputation of an LLC's contacts to its owner, member and manager is equitable. Therefore, for the jurisdictional analysis, the Court considers the contacts of Superior with Louisiana as Butaud's contacts. For general personal jurisdiction over a corporation, the primary bases to be considered are the corporation's place of incorporation and principal place of business.[64] It is exceptional for a court in the Fifth Circuit to find that it possesses general personal jurisdiction over a corporation in a forum other than the corporation's place of incorporation or principal place of business.[65] Superior is allegedly incorporated in Louisiana, and its principal place of business is in Louisiana.[66] Superior's contacts with Louisiana, when combined with Butaud's ownership of properties and business activities in Louisiana, support the Court's finding of general personal jurisdiction over Butaud.

---

[62] Rec. Doc. 42 p. 10 ("Excel respectfully represents that it is likewise proper to sue Mr. Butaud, the member, manager, and agent of Superior, under a 'veil piercing' action in Louisiana as well.").

[63] *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La.*, 690 F.Supp. 2d 435, 443 (E.D. La. 2010) (citing *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)); *see also FloQuip, Inc. v. Chem Rock Technologies*, 2016 WL 4574436 at *15 (W.D. La. 2016).

[64] *Daimler*, 571 U.S. at 139.

[65] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").

[66] Butaud admits that Superior is headquartered in Louisiana. Rec. Doc. 35-1 p. 13. *See also* Rec. Doc. 42 p. 10.

59449

Because the Court finds that it possesses general personal jurisdiction, it need not reach the question of specific personal jurisdiction. Butaud's *Motion to Dismiss* under Rule 12(b)(2) for lack of personal jurisdiction shall be DENIED. The Court now turns to Butaud's *Motion to Dismiss* under Rule 12(b)(6).

**B. Rule 12(b)(6)**

   *i. Legal Standard*

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[67] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[68] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[69]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[70] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[71] However, "[a]

---

[67] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[68] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[69] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[70] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted).
[71] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
59449

claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[72] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[73] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[74] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[75]

### ii. Parties' Arguments

Butaud contends that Excel has not alleged facts supporting plausible entitlement to relief. Specifically, Butaud argues that Excel's *Third Party Complaint* makes generalized factual allegations against Butaud and Superior together without providing details as to actions taken by Butaud individually.[76] Butaud also argues that he cannot be personally liable for claims asserted against Superior by Excel because he was not a party to the contract in question.[77] Lastly, Butaud argues that Excel has not alleged facts supporting the elements of fraud, intentional and negligent torts, and alter ego claims.[78] Notably, Butaud does not challenge the underlying breach of contract claim presented by Excel; Butaud's *Motion* strictly pertains to his personal liability.[79]

---

[72] *Twombly*, 550 U.S. at 570.
[73] *Iqbal*, 556 U.S. at 678.
[74] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[75] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[76] Rec. Doc. 35-1 p. 7.
[77] *Id.* at p. 7-8.
[78] *Id.* at p. 8-9.
[79] *Id.* at p. 7 ("Regardless, while plausible claims of Excel against Superior can be surmised, claims against Mr. Butaud cannot.").
59449

Excel responds that the following allegations in the *Third Party Complaint* present a factual basis for its claims:

> Excel's Third Party Demand specifically sets forth that Superior and Mr. Butaud engaged in the "misapplication of funds" and otherwise "knowingly failed to apply the money received from [FUFC] and Excel as necessary to settle claims of sellers of movables or laborers"; assigned task orders and received payment from [FUFC], but then returned the task orders to Excel; "knowingly invoiced Excel for materials Superior obtained on projects unrelated to Excel's scope of work"; and "obtained materials from Excel, and subsequently sold those same materials to other contractors".[80]

Citing *Ogea v. Merritt*,[81] Excel argues that these facts present a "veil piercing" claim that allows it to pursue relief from Butaud personally.[82]

### iii. Piercing the Corporate Veil

Because Superior is a limited liability corporation, Excel may only recover from Butaud if it meets the requirements to "pierce the corporate veil." A limited liability company is a business entity that is separate from its members and the liability of its members is governed solely by the law of limited liability companies.[83] As a general rule, "an individual member is not personally responsible for the liabilities of an L.L.C. beyond the member's capital contributions, with only specifically enumerated exceptions in cases of fraud, breach of professional duty, or other 'negligent or wrongful act.'"[84] Louisiana's limited liability law provides that "no member, manager, employee, or agent of a limited

---

[80] Rec. Doc. 42 p. 15.
[81] 2013-1085 (La. 12/10/13), 130 So.3d 888.
[82] Rec. Doc. 42 p. 18.
[83] *Ogea,* 130 So.3d 888; LA. REV. STAT. 12:1320(A).
[84] *Cargill, Inc. v. Clark*, No. 14-00233-BAJ-SCR, 2015 WL 4715010, at *8 (M.D. La. Aug. 7, 2015).
59449

liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company."[85] Additionally, "a member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such person's rights against or liability to the limited liability company."[86] Subsection D of LA. REV. STAT. 12:1320 provides enumerated exceptions to the general rule that shields LLC members from liability for the acts of the LLC. It provides:

> Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.[87]

"As a first component, [the Court] must determine whether [Excel] . . . "by law" has a cause of action against [Butaud] individually."[88] "Using the alter ego doctrine to pierce the corporate veil is an equitable remedy, not an independent cause of action."[89] Excel does not argue that its factual allegations support independent claims of fraud or intentional or negligent tort; its factual allegations supporting fraud and tortious conduct are merely intended to support its "veil piercing" claim against

---

[85] LA. REV. STAT. 12:1320(B).
[86] LA. REV. STAT. 12:1320(C).
[87] LA. REV. STAT. 12:1320(D).
[88] *Id.* at 897.
[89] *In re Gulf States Long Term Acute Care of Covington, LLC*, 487 B.R. 713 (Bankr. Ct. E.D. La. 2013) (citing *Peacock v. Thomas*, 516 U.S. 349, 354 (1996); *Grothues v. I.R.S. (In re Grothues)*, 226 F.3d 334, 337 (5th Cir. 2000); *Western Oil & Gas JV, Inc. v. Griffiths*, 91 Fed.Appx. 901, 904 (5th Cir. 2003); *Tamko Roofing Products, Inc. v. Smith Engineering Co.*, 450 F.3d 822, n.2 (8th Cir. 2006); *Local 159, 342, 343 & 444 v. Nor–Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999); *In re EBW*, 2009 WL 116995, *5 (Bankr. M.D.N.C. 2009)).
59449

Butaud.[90] That "veil piercing" claim, however, must rest upon some underlying cause of action against Butaud individually. Here, the only plausible cause of action supported by factual allegations is a breach of contract claim against Superior, which is not challenged in Butaud's *Motion*. However, it is undisputed that Butaud is not a party to the contract in his personal capacity, and thus there is no underlying cause of action in contract against Butaud personally. In its *Opposition*, Excel conclusively states that its factual allegations "detail a 'traditionally recognized tort'—fraud and conversion,"[91] but nowhere in the *Opposition* does Excel state the elements of those claims, nor does Excel argue how its alleged facts meet those elements. Rather, Excel merely offers conclusory statements about fraud and conversion in support of its argument that the four-factor test described *infra* weighs in favor of piercing the corporate veil.[92] In sum, Excel does not assert fraud, conversion, misappropriation, or theft as individual claims against Butaud; consequently, there is no basis for the Court to "pierce the corporate veil" and hold Butaud personally liable.

Moreover, Excel's argument fails the second prong of the veil piercing analysis as well. "[A]s a second and integral component, [Excel] can recover against [Butaud] personally only if [Excel's] cause of action arises from 'any fraud practiced upon [it]' or 'any breach of professional duty or other negligent or wrongful act.'"[93] Construing LA. REV. STAT. 12:1320(D), this District has recognized that "[t]o be held personally liable, a

---

[90] *See* Rec. Doc. 42 p. 17-18 ("Misappropriation and theft, being crimes, are factors which 'weigh in favor of holding the member personally liable,'"; "These allegations likewise detail a 'traditionally recognized tort'—fraud and conversion—which is another *Ogea* factor supporting a facially plausible claim.").
[91] Rec. Doc. 42 p. 18 (citations omitted).
[92] *See Id.*
[93] *Ogea*, 130 S.3d at 897 (quoting La. R.S. 12:1320(D)).
59449

member [or manager] must commit fraud, breach a professional duty, or perform a negligent or wrongful act against another."[94] In *Ogea v. Merritt*,[95] the Louisiana Supreme Court "authoritatively construed" the exceptions to the general rule of member and manager limited liability set forth in LA. REV. STAT. 12:1320(D).[96] In its discussion of the terms "negligent and wrongful act," the *Ogea* court found that "the terms 'negligent' act and 'wrongful act' as employed in LA. REV. STAT. 12:1320(D) are not limited to 'torts'".[97] The court set forth four factors to be considered when determining whether "the general rule of limited liability must yield to the exception for a member's 'negligent or wrongful act'."[98] The four factors to be considered are: "1) whether a member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member."[99]

---

[94] *J & J Sports Production, Inc. v. KCK Holdings, LLC*, No. 14-00269-BAJ-RLB, 2015 WL 7195770, *6 (M.D. La. Nov. 16, 2015).
[95] 130 So.3d 888 (2013).
[96] In *Medeaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 885 (5th Cir. 2014), the Fifth Circuit explained that the Louisiana Supreme Court in *Ogea v. Merritt* "authoritatively construed" La. R.S. 12:1320. Subsequent to *Ogea*, however, federal and state courts have continued to rely upon Louisiana's jurisprudential piercing of the corporate veil to determine individual liability of LLC members. *See*, *Medeaa v. K.A.P. Enterprises, L.L.C.*, No. 09-1211, 2015 WL 1564876 (W.D. La. Apr. 7, 2015)(on remand from Fifth Circuit district noted that "neither the Louisiana Supreme Court in *Ogea* nor the Fifth Circuit in its analysis of [its] prior ruling required that § 12:1320 be the exclusive remedy for holding members of LLCs personally liable for their actions when fraud is involved.") (Currently on appeal to the Fifth Circuit); *see also*, *Cargill, Inc. v. Clark*, No. 14-00233-BAJ-SCR, 2015 WL 4715010 (M.D. La. Aug. 7, 2015) (discussing federal and state court cases applying jurisprudential piercing of corporate veil analysis).
[97] *Ogea* 130 So.3d at 900.
[98] *Ogea*, 130 So.3d at 905.
[99] *Ogea,* 130 So.3d at 900-01.
59449

The Court finds that there are insufficient facts to support a claim against Butaud in his personal capacity. The *Third Party Complaint* refers to Superior and Butaud simultaneously for nearly every allegation of fact. In order to satisfy the pleading standards set by *Iqbal* and *Twombly*, the *Third Party Complaint* must state with specificity what claims Excel is alleging against Butaud and what factual allegations support those claims.[100] Moreover, a "veil piercing" action requires proof that the member of the corporation acted in such a way as to render the member personally liable outside of the protections normally offered by the corporate veil.[101] Because Excel refers to both Butaud and Superior, it is impossible to distinguish the actions of Butaud, a member of Superior, from Superior itself. Consequently, it is impossible to determine how the alleged facts weigh towards the four-factor "veil piercing" test because it is not clear what conduct is attributable to Butaud individually. Excel's allegations of fact therefore fail the second prong of the veil piercing analysis as well due to a failure to meet pleading standards.

---

[100] *See Twombly*, 550 U.S. at 570.
[101] *Ogea*, 130 So.3d at 905.
59449

## III. CONCLUSION

For the reasons set forth above, Butaud's *Motion to Dismiss*[102] is **DENIED** under Rule 12(b)(2) and **GRANTED** under Rule 12(b)(6). Excel's claims against Butaud are dismissed WITHOUT PREJUDICE. Excel shall have twenty-one (21) days from the date of this *Ruling* to amend its *Third-Party Complaint*[103] to cure the deficiencies noted herein. Failure to amend by this deadline will result in a dismissal of all claims with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 24, 2020.

*Shelly D. Dick*
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[102] Rec. Doc. 54.
[103] Rec. Doc. 7.
59449